235 So.2d 253 (1970)
John Hardy ALLEN
v.
Jack RITTER, Otho C. Faulkner, and William J. Oswald, d/b/a Little Taxas Farm.
No. 45790.
Supreme Court of Mississippi.
May 11, 1970.
*254 John L. Kennedy, Holly Springs, for appellant.
Wall Doxey, Jr., Holly Springs, for appellees.
JONES, Justice.
Appellant Allen sued appellees in the Circuit Court of Marshall County for false arrest, malicious prosecution, abuse of process, etc. The jury rendered a verdict of $6,000 against the appellee, Ritter. The other two defendants made a motion to exclude the evidence as to them and to direct a verdict in their favor. The motion was sustained. Motions for a new trial were filed and also a motion for a judgment notwithstanding the verdict. The lower court sustained the motion for a judgment notwithstanding the verdict, set aside the jury's verdict, and entered a judgment in favor of the appellees, from which order the appellant has appealed. The motion for a new trial filed by Ritter was withdrawn after the court sustained the motion for a judgment notwithstanding the verdict.
Inasmuch as the case will have to be tried again, we will not undertake to give a detailed statement of the facts but only so much thereof as might indicate the reason for our ruling.
Otho C. Faulkner and William J. Oswald, both of Memphis, owned a plantation of something over six hundred acres in Marshall County. Ritter was their manager. He made arrangements with one Wayne Briscoe, whereby Briscoe was to use and cultivate approximately thirty-two acres of the land in growing cotton.
Briscoe then made an agreement with the appellant. Allen, the appellant, and Briscoe do not disagree to any great extent as to the terms of said agreement. However, the part to which they do disagree is vital to this suit.
Allen said that the agreement was that he was to do daywork for Briscoe at $7.00 per day, doing whatever Briscoe had for him to do, and that he was to have the right to grow cotton on the said thirty-two acres, Briscoe furnishing the money necessary for fertilizer, etc., and Allen to have the profits from said cotton; and under some circumstances a bonus from the government payments. Briscoe virtually agreed that this was the contract except that he added Allen was to have the profit in the cotton provided he stayed with him the entire year. This is where there was some difference between Briscoe and Allen. Briscoe claimed that Allen abandoned the daywork, which was denied by Allen. Mr. Ritter knew generally that Briscoe and Allen had some agreement but did not acquaint himself with Allen's version thereof, relying entirely on Briscoe's statements.
In November 1967, Allen appeared in the cotton field with a mechanical picker to gather the cotton. Briscoe got in touch with Ritter who came to the scene. Briscoe told Ritter he did not want Allen on the place. They had a conversation with Allen who declined to leave and was told by Ritter that he would have to get the law. Thereupon Ritter went to a justice of the peace, and made an affidavit charging Allen with trespassing.
About ten days after the affidavit was made, Allen was tried by jury and acquitted. This case is a result of that procedure.
We think the court was in error in entering the judgment notwithstanding the verdict. There were disputed questions *255 that should have been submitted to the jury; one of which was as to the contract and whether Allen had abandoned same; another was as to the acts and conduct of the parties, and whether such conduct evidenced malice, and lack of probable cause; also, whether damages resulted.
We think the proof in the original trial required a submission of the issues to the jury relative to Faulkner and Oswald.
The defendant made a motion for a new trial, and the court, rather than passing on the motion for a new trial, sustained the motion for a judgment notwithstanding the verdict. We think the court should have sustained the motion for a new trial because of plainly erroneous instructions given to the jury, which are so erroneous as to amount to an unfair trial and to call upon us to rectify this very unsatisfactory situation in a court of justice. See Miss.Sup.Ct.Rules, Rule 6(b). We think the court erred in giving a peremptory instruction for Faulkner and Oswald. The principals, where they direct, where the act is within the scope of authority of the agent, or where the principals participate in or ratify the actions of the agents, are liable. 54 C.J.S. Malicious Prosecution § 63, p. 1029 (1948).
Mr. Faulkner testified that he never heard of John Hardy Allen until after his arrest. He learned of the occurrence on one of his trips to the farm, being told by Jack Ritter. Mr. Faulkner testified that Ritter was the manager of the farm and ran the place; that as far as business operations of the farm, he had the authority to make decisions. Mr. Faulkner was asked whether he ever had any conversation with Jack Ritter about Allen prior to November 18, the day of the trial. Mr. Faulkner answered, "Not directly as such, maybe through information that  that Wayne, Mr. Briscoe and one of his tenants was having some problems, * * *" and he had a telephone conversation with someone at his office. He did not know who called, but they asked him if he knew anything about the problems that they were having, and he told them no, but wished they would get it straightened out. He stated that Mr. Ritter signed all checks and the evidence showed that an attorney hired to assist in the prosecution had been paid by Ritter with farm funds. When asked if Mr. Ritter ever consulted him about things like this, his answer was, "He did not think it was necessary." No objection was ever made by Faulkner or Oswald as to the prosecution, nor to the payment of the attorney's fee from their money. Ritter was never even reprimanded but remained in the employment of Faulkner and Oswald.
Mr. Bob Sanders, in 1967, worked for Legal Services in Holly Springs. Mr. Allen had talked to him about the conflict with Mr. Briscoe and Mr. Ritter.
He testified that sometime, either the last week in October, or the first week in November, he and a Mr. Randall were at the office and Mr. Randall placed a call to Dr. Faulkner in Memphis. The witness was on the extension in another office and overheard the conversation between Mr. Faulkner and Mr. Randall. This was prior to November 18. He testified that Mr. Randall wanted to know from Dr. Faulkner whether Mr. Allen should go on the land and he said that Dr. Faulkner said something to the effect that "Mr. Ritter was our man down there and whatever he does more or less goes," and Faulkner further said that they should try to handle it down at the farm but if they did not handle it down there, "We will have to do something," and it is his recollection that Faulkner said they would have to get him for trespass or something to that effect.
Allen was tried on November 18, 1967, and acquitted. This suit was tried February 25, 1969, over a year afterwards. Ritter was still managing the farm.
The question as to whether the making of an affidavit was within the authority of Mr. Ritter, or if not, whether his actions were ratified by the owners of the farm, should have been submitted to the jury. It *256 was error to dismiss as to the two owners of the farm.
Further, the motion for a new trial rather than for a judgment notwithstanding the verdict should have been sustained because of instructions given to the plaintiff.
The jury was instructed by the court for the plaintiff that if they believed from a preponderance of the evidence, that if the defendant Ritter made the affidavit against the plaintiff without probable cause and with malice, they should return a verdict for the plaintiff. The court also gave two instructions for the plaintiff that an acquittal of the charge made in the affidavit was prima facie evidence that the prosecution was instituted with malice and without probable cause. All of the testimony on both sides had been introduced, and there was a full disclosure of all events and facts. Under these circumstances, the prima facie case disappeared and the question of existence of malice and probable cause was to be determined from the facts. Fayard v. Louisville & N.R. Co., Miss., 48 So.2d 133 (1950); Taylor v. Illinois Central R.R. Co., 200 Miss. 571, 27 So.2d 894 (1946); Gulf, M. & N.R. Co. v. Sparkman, 180 Miss. 456, 177 So. 760 (1938); Yazoo & M.V.R. Co. v. Green, 167 Miss. 137, 147 So. 333 (1933).
The jury was given an instruction for the plaintiff that they might award punitive damages on the testimony as to the financial worth of the defendant, Jack Ritter.
This instruction is misleading. There are other elements that enter into the question of punitive damages as shown by 25 C.J.S. Damages § 126(1) pages 1163-1164 (1966), and in the same authority in § 126(3) page 1169, it is stated:
Even where the pecuniary ability to respond may be considered, however, it is not the sole factor which is to be considered.
The court gave the following instruction for the plaintiff:
The Court instructs the jury for the Plaintiff that malice may be determined by this jury from a preponderance of the evidence, from the defendant, Jack Ritter's conduct and declaration, and from the zeal and activity of Jack Ritter in pushing the prosecution against John Hardy Allen.
This instruction is a comment on the testimony and is so confusing that the jury might easily reach the conclusion that it was a peremptory instruction to find punitive damages.
The following instruction was given:
The Court instructs the jury that if the jury should find, from a preponderance of the evidence that the arrest of John Hardy Allen was made through malice and with malicious intent, without probable cause, then it will be your duty as jurymen to award the Plaintiff punitive damages, and punitive damages may be any sum, which you and the jurymen deem reasonable under the circumstance, but shall not exceed $100,000.00, the amount sued upon. (emphasis added).
This instruction tells the jury that it is their duty to award punitive damages. The award of punitive damages is within the discretion of the jury.
The following instruction was also given:
The Court instructs the jury for the Plaintiff, that the law in Mississippi is that the question of malice is to be determined by the jury, unless only one conclusion may reasonably by [sic] drawn from the evidence. The Defendants' improper purpose usually is proved by circumstantial evidence.
This instruction could easily be confusing to the jury, and moreover, it omits the fact that the question of malice is to be determined *257 "from a preponderance of the evidence." It is not to be determined by the jury without considering the evidence.
The court gives this instruction for the plaintiff:
The Court instructs the jury for the Plaintiff, that if you find from a preponderance of the evidence that the damages and loss of crop incurred by Plaintiff were a direct result of the actions of the Defendant then it will be your duty to return a verdict in favor of the Plaintiff.
This instruction is misleading in that it does not make it necessary for the jury to first find that the defendant is liable as for malicious prosecution, etc.
Instruction Number 15 given for the plaintiff authorizes the giving of punitive damages without the necessity of the plaintiff having sustained actual damages. Punitive damages predicated on actual damages are not recoverable if no actual damages are allowed. 25 C.J.S. Damages § 118, page 1121 (1966); Western Union Tel. Co. v. Jennings, 110 Miss. 673, 70 So. 830 (1915); McCain v. Cochran, 153 Miss. 237, 120 So. 823 (1929).
There are other instructions which may be questionable but we do not feel it necessary to consider any other than those above.
The action of the lower court in entering judgment for defendant notwithstanding the verdict is reversed and set aside.
The action of the lower court in granting a peremptory instruction to Faulkner and Oswald is reversed. The motions for a new trial are sustained and the case is remanded for a new trial as against Ritter, Oswald, and Faulkner.
Reversed and remanded.
ETHRIDGE, C.J., and BRADY, INZER and ROBERTSON, JJ., concur.