384 So.2d 1042 (1980)
GAYLORD's OF MERIDIAN, INC. and/or Gaylord's of Gulfport, Inc.
v.
Verna SICARD.
No. 51982.
Supreme Court of Mississippi.
June 4, 1980.
Rehearing Denied July 9, 1980.
Bryant & Stennis, James O. Dukes, Gulfport, for appellant.
Wittmann & Berry, Thomas D. Berry, Jr., Gulfport, Gex, Gex & Phillips, Walter J. Gex, III, Bay St. Louis, for appellee.
Before ROBERTSON, PATTERSON and LEE, JJ.
*1043 LEE, Justice, for the Court:
Verna Sicard filed suit in the Circuit Court of the First Judicial District, Harrison County, against Gaylord's of Meridian, Inc. [Gaylord's] for malicious prosecution. The jury returned a verdict in the amounts of twenty-five thousand dollars ($25,000), actual damages, and fifty thousand dollars ($50,000), punitive damages, judgment was entered for said sums, and Gaylord's has appealed, assigning seven (7) errors in the trial below.
On June 11, 1976, appellant, age sixty-three (63), and her sister, Mrs. Inez Frilous, age seventy-four (74), were shopping at Gaylord's in Gulfport, Mississippi, and, according to them, appellee had selected two pairs of slacks from a rack, one bearing a price tag of one dollar sixty-six cents ($1.66) and the other, a pair of red slacks, had no price tag attached. They went to the checkout stand, and appellee paid for her purchases and proceeded toward the door. According to appellant, the red slacks sold for three dollars ($3.00) per pair, but appellee told the clerk they were the same price as the $1.66 slacks.
Appellee testified that she was accused by Mrs. Ruth Mondt, a security officer, of pulling the price tag off the pair of red slacks, that she was taken to the office where she was abused and was handed a form, which she signed without reading, to the effect that she had taken the red slacks without intending to pay for same. She said that she signed the instrument because she was afraid. Appellant and her sister were put in a police car and were driven to the Gulfport Police Department, where appellant was charged with price changing. The charge was amended to that of shoplifting, she was found guilty in the City Court, and executed a bond and appeal to the County Court, where the charge was changed to false pretense. She was acquitted by a jury.
The evidence for appellant is directly contradictory to that of appellee and makes out a case of probable cause for prosecution of appellee.

I.

Did the lower court err in refusing to grant a directed verdict or a peremptory instruction for appellant?
Suits for malicious prosecution are not favored and the courts have held that a clear case must be established. State, for the Use and Benefit of Foster v. Turner, 319 So.2d 233 (Miss. 1975). The elements required to be proved in order to make a case of malicious prosecution are stated in Harvill v. Tabor, 240 Miss. 750, 128 So.2d 863 (1961), as follows:
"In order to maintain an action for malicious prosecution, the plaintiff must establish the following elements: (1) The institution or continuation of original judicial proceedings, either criminal or civil (the proceeding here is criminal); (2) by, or at the instance of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of. 34 Am.Jur., Malicious Prosecution, Section 6, page 706; 54 C.J.S., Malicious Prosecution, § 4, page 955." 240 Miss. at 753-754; 128 So.2d at 864.
The burden of proving a malicious prosecution case by a preponderance of the evidence rests upon the plaintiff. The appellant argues that probable cause for instituting the proceedings, and lack of malice, conclusively appear because appellee was convicted in the city court, even though she was later acquitted in the county court.
In Pugh v. Easterling, 367 So.2d 935 (Miss. 1979), this Court discussed previous decisions on malicious prosecution cases and stated:
"We hold that a conviction is conclusive evidence of probable cause for instituting a criminal prosecution, and a plaintiff, in a suit for malicious prosecution based on a criminal prosecution, must show that the criminal proceeding terminated in his favor as a condition precedent to recovery." 367 So.2d at 938.
*1044 In Pugh, the Court held that a judgment of the justice of the peace court [now justice court] recited a conviction, which became a final judgment, and it constituted conclusive evidence that probable cause for the criminal prosecution existed and that the plaintiff had no ground for a malicious prosecution suit. The Court also stated we have held that a case is terminated in a plaintiff's favor when the prosecution is abandoned or the affidavit is withdrawn, and that entry of a nolle prosequi in a criminal proceeding terminates the same in favor of the plaintiff. By the same reasoning, a judgment of an appellate court (or a trial de novo) reversing a conviction would be a termination in favor of the plaintiff.
We are of the opinion that termination of a criminal proceeding in favor of the defendant in that action simply gives him the right to proceed with a malicious prosecution suit, and, as in other civil suits, he must prove his case by a preponderance of the evidence. Also, conviction in a lower criminal court, although reversed by an appellate court, is prima facie evidence that the prosecuting party had probable cause to proceed with the prosecution, which may be overcome by the defendant's (plaintiff in the civil proceeding) proof.
In the case at bar, the conflicting facts presented a question for the jury on the requisites of malicious prosecution, and, the jury having decided the issue in favor of the appellee, the prima facie case made out by the appellant in showing the conviction in city court disappeared. The question of liability was properly submitted to the jury.

II.

Did the lower court err in refusing Instructions D-21, D-21-A, and D-23?
Instruction D-21 would have instructed the jury that a conviction in City Court is conclusive evidence of the existence of probable cause for an arrest in the absence of fraud, perjury, or other corrupt means of obtaining the conviction, even if the conviction is later reversed on appeal. Instruction 21-A instructed the jury that a conviction in city court is conclusive evidence of the existence of probable cause for an arrest, even if the conviction is later reversed on appeal. Those instructions do not correctly state the law and were properly refused. Pugh v. Easterling, supra.
Instruction D-23 would tell the jury that, although plaintiff was convicted in the city court and later acquitted in county court, the city court conviction was prima facie evidence that probable cause existed, unless the plaintiff proved by a preponderance of the evidence that probable cause did not exist. After all the evidence was adduced, the defendant's prima facie case disappeared and the issue was for the jury to decide upon all the evidence before it. There was no error in refusing the instruction. Allen v. Ritter, 235 So.2d 253 (Miss. 1970).

III.

Did the lower court err in refusing Instruction D-2 and in granting Instruction C.11?
The two instructions follow:
"JURY INSTRUCTION NO. D-2
The Court instructs the jury that the Plaintiff is not entitled to recover punitive damages from the Defendant, Gaylord's of Gulfport, Inc."
and
"INSTRUCTION NO. C.11
When you reach a verdict in this case, it should be written on a separate piece of paper, need not be signed by you, and may be in either of the following forms:
If you find for the Plaintiff:
`We, the jury, find for the Plaintiff and assess her actual damages at $ ____.'
If you find for the Plaintiff and assess punitive damages:
`We, the jury, find for the Plaintiff and assess her actual damages at $ ____; and her punitive damages at $ ____.'
If you find for the Defendant:

*1045 `We, the jury, find for the Defendant.'"
The appellant objects to the above instructions for the reason that they both refer to punitive damages, and argues that the proof did not sustain a claim for punitive damages. All the evidence, when considered by the jury, together with reasonable inferences, support the elements of malice and probable cause and make out a case for punitive damages on those issues. Therefore, the court correctly refused Instruction D-2 and granted Instructions C.11.

IV.

Did the lower court err in refusing Instruction D-6?
Instruction D-6 required the appellee to prove punitive damages beyond a reasonable doubt and to a moral certainty. Appellant argues that the same degree of proof is required for punitive damages as in a criminal case to prove the guilt of an accused. Although the damages are by way of penalizing the defendant against whom they are sought, the proof is by a preponderance of the evidence rather than beyond reasonable doubt, and there is no merit in such contention. In Allen v. Ritter, supra, the Court said:
"This instruction could easily be confusing to the jury, and moreover, it omits the fact that the question of malice is to be determined `from a preponderance of the evidence.'" 235 So.2d at 256-257.

V.

Did the lower court err in giving Instruction C.20.09?
Without setting out the Court's instruction, it is sufficient to say that the instruction does not constitute error. It was taken verbatim from the Mississippi Model Jury Instructions, p. 121, adopted by the Mississippi Circuit Court Judges' Association and the Mississippi Judicial College. However, even though it is stated as a model of the instruction, we are of the opinion that there is better form for the instruction which has previously been stated by this Court and reference to punitive damage instructions appearing in the decisions of this Court would better present the question to the jury.

VI.

Did the lower court err in refusing Instructions D-19 and D-20 and in granting C.32.01?
We have carefully examined Instructions D-19 and D-20, refused by the court, and C.32.01, granted by the court, all assigned as error, and we find that there is no merit in the assignment.

VII.

Was the jury verdict of $25,000 in actual damages and $50,000 in punitive damages against the overwhelming weight of the evidence?
The evidence for appellees on actual damages indicated that, as a result of the incident, she felt ashamed and was humiliated by the criminal accusations, she had nightmares and difficulty sleeping afterwards, and had to move in with her sister, that she was required to see a doctor who prescribed Librium for her, and that she was embarrassed to seek employment because she would have to disclose that she had been arrested previously.
The proof on the issue of punitive damages was to the effect that Gaylord's had eighteen (18) or twenty (20) other stores. There was no evidence relating to the financial worth of Gaylord's and there was no guide whereby the jury could determine punitive damages. In First American National Bank of Iuka v. Mitchell, 359 So.2d 1376 (Miss. 1978), the Court held that without a showing of the net worth or financial condition of the defendant, there was no way to measure the punitive damage award.
We are of the opinion that the verdict of the jury as to damages is not sustained by the evidence and that the verdict of the jury is contrary to the overwhelming weight of the evidence on the issue of damages, *1046 both actual and punitive, and that the judgment of the lower court should be, and it is, reversed and remanded for a new trial on the issue of damages alone.
AFFIRMED AS TO LIABILITY: REVERSED AND REMANDED FOR A NEW TRIAL ON DAMAGES ONLY.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.