# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-00947-SCT

*MARY E. HERRINGTON AND CLYDE P. HERRINGTON*

*v.*

*JAMES P. SPELL, M.D.*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/92 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | EDWARD A. WILLIAMSON |
| | T. JACKSON LYONS |
| | RICK F. FORTENBERRY, JR. |
| ATTORNEYS FOR APPELLEE: | JAMES A. BECKER JR. |
| | MILDRED M. MORRIS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 4/17/97 |
| MOTION FOR REHEARING FILED: | 7/17/96 |
| MANDATE ISSUED: | 5/5/97 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinions are withdrawn and these opinions are substituted therefor.

¶2. A complaint alleging medical malpractice was filed against Dr. James P. Spell on behalf of Mary E. Herrington and her husband, Clyde P. Herrington, in December 1990. This complaint alleged that Dr. Spell contracted with Mrs. Herrington to perform a biopsy upon her and that he exceeded their agreement by performing a modified radical mastectomy; further, the Herringtons alleged that alternative treatment less than a modified radical mastectomy would have been just as effective. Additionally, the Herringtons alleged that Dr. Spell should have awakened Mrs. Herrington after the biopsy and informed her of the results before proceeding with any additional treatment. The

complaint prayed for actual and punitive damages against Dr. Spell.

¶3. The case proceeded through discovery, and trial began on June 17, 1992. On June 20, 1992, the jury returned an eleven to one verdict in Dr. Spell's favor. The lower court overruled the Herringtons' motion for judgment notwithstanding the verdict and motion for new trial. Aggrieved by the decision of the lower court, the Herringtons appealed to this Court and asserted the following as issues on appeal:

**I. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED THE HERRINGTONS' PEREMPTORY INSTRUCTION AND GRANTED JUDGMENT NOTWITHSTANDING THE VERDICT ON THE BASIS OF FAILURE OF INFORMED CONSENT OR ON THE BASIS OF DR. SPELL'S FAILURE TO POSSESS A REALISTIC UNDERSTANDING OF HIS OWN LIMITATIONS AND A KNOWLEDGE OF OPTIONS, RESOURCES AND OTHER FACILITIES AVAILABLE IN THE TREATMENT OF MARY HERRINGTON AND THE STATE OF KNOWLEDGE, AS IT EXISTED IN DECEMBER 1988.**

**II. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED THE HERRINGTONS' PEREMPTORY INSTRUCTION AND GRANTED JUDGMENT NOTWITHSTANDING THE VERDICT ON THE BASIS OF A LACK OF ANY ACTUAL CONSENT DUE TO INCAPACITY FROM MEDICATIONS ADMINISTERED TO THE PLAINTIFF.**

**III. WHETHER THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY BY GRANTING DR. SPELL'S INSTRUCTION D-17 AND DENYING THE HERRINGTONS' INSTRUCTION P-7(C) AND TWO INSTRUCTIONS NUMBERED P-8(D) WHICH REQUIRED THAT THE HERRINGTONS PROVE WHICH OF TWO REASONABLE ALTERNATIVE PROCEDURES A HYPOTHETICAL, REASONABLE PERSON WOULD HAVE CHOSEN IN ORDER TO PROVE CAUSATION.**

**IV. WHETHER THE FAILURE TO EXCUSE TWO JURORS, ONE OF WHOM WAS A FORMER PATIENT OF DR. SPELL AND THE OTHER OF WHOM WAS A PATIENT OF DR. HULL AND THEIR INCLUSION IN THE JURY IN THIS CASE CONSTITUTES REVERSIBLE ERROR.**

**V. WHETHER THE TRIAL COURT IMPROPERLY INTERJECTED ITSELF INTO THE TRIAL OF THE CASE TO THE PREJUDICE OF THE HERRINGTONS.**

**VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON DR. SPELL'S DUTY TO POSSESS KNOWLEDGE OF A REALISTIC UNDERSTANDING OF HIS OWN LIMITATIONS AND A KNOWLEDGE OF OPTIONS, RESOURCES AND OTHER FACILITIES AVAILABLE IN THE TREATMENT OF MARY HERRINGTON AND THE STATE OF KNOWLEDGE, AS IT EXISTED IN DECEMBER 1988, AS REQUESTED BY THE HERRINGTONS' INSTRUCTION P-7(A).**

**VII. WHETHER THE HERRINGTONS SHOULD HAVE BEEN ENTITLED TO A NEW TRIAL BECAUSE OF MULTIPLE EVIDENTIARY ERRORS AND RULINGS BY THE TRIAL COURT.**

**VIII. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN FAILING TO AWARD A NEW TRIAL TO THE HERRINGTONS BECAUSE THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**IX. WHETHER THE COURT SHOULD HAVE ALLOWED THE CASE TO PROCEED BEFORE THE JURY ON THE ISSUE OF PUNITIVE DAMAGES.**

¶4. After thorough consideration and careful review, this Court holds that none of the issues have merit and the lower court should be affirmed.

<u>**Issues I and II**</u>

¶5. The standard of review for whether a peremptory instruction should be granted is the same as the criteria for a directed verdict. *Wilner v. Miss. Export R. Co.*, 546 So. 2d 678, 681 (Miss. 1989). Because the request for a peremptory instruction is the "functional equivalent of a motion for a directed verdict under Rule 50(a)," we apply the same standard to both. *Id.*

> [T]he trial court must consider the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences that may be drawn therefrom; unless the plaintiff's evidence is so lacking that reasonable jurors could not reach a verdict for the plaintiff, the [instruction] should be [given].

*Wilner*, 546 So. 2d at 681. We have also held that "a trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Vines v. Windham*, 606 So. 2d 128, 131 (Miss. 1992). In the present case, there was clearly a factual question to be determined. Even giving the Herringtons the benefit of all reasonable inferences, a question of fact for the jury remained.

¶6. The main point the Herringtons make in this argument is that the consent Mrs. Herrington gave was invalid. The undisputed testimony was that Mrs. Herrington had taken three medications the night before. She asserts that this rendered her consent invalid because she did not remember signing the consent form. Mrs. Herrington also relies upon the testimony of Dr. Romsdahl that it is not at all inconsistent with mental incapacitation from taking those drugs or having, at least, limited affect on one's capacity that a person appears normal when under heavy sedation. Thus, Dr. Spell's testimony that Mrs. Herrington appeared normal would not necessarily mean that her mind was functioning normally.

¶7. Because the testimony from both parties conflicts, it becomes a fact question for the jury. Thus, credibility was a major issue. Whom did the jurors believe, Dr. Spell or the Herringtons? There are a number of examples where Mrs. Herrington's credibility was called into question. For example, Mrs. Herrington testified that she was not used to the types of medications she had the night before the surgery. However, her medical records proved that she had taken numerous mood altering medications over a period of years. Moreover, two of the medications taken on the night before

surgery were shown in the medical records to be Mrs. Herrington's regular medications. There was definitely a jury question about whether the consent was valid. Thus, denying a peremptory instruction on this ground was not error.

¶8. The Herringtons' next contention relates to what the scope and duty of a doctor are in this situation in regards to informed consent. In an action based upon lack of informed consent, the plaintiff must prove by a preponderance of the evidence that there was a duty, breach of that duty, proximate cause, and an injury resulting from the breach. *Hudson v. Parvin*, 582 So. 2d 403, 410 (Miss. 1991).

> We have adopted an objective test to determine what information a physician must disclose to the patient about the medical procedure which is to be performed. The test is based on **the patient's need rather than on the standard in the medical profession**. Using the objective test, "a physician must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment." *Phillips by and through Phillips v. Hull*, 516 So. 2d 488, 493 (Miss. 1987)(**quoting** *Reikes v. Martin*, 471 So. 2d 385, 392 (Miss. 1985)).
>
> An objective test is also used to determine if there is a causal connection between the breach of the duty and the resulting injury. "Under this test the question becomes whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment." *Reikes v. Martin*, 471 So. 2d 385, 392 (Miss. 1985).

*Hudson*, 582 So. 2d at 410 (emphasis added). We have held that the test for informed consent is not what the medical standard is, but rather what the patient needs to be informed.

¶9. Dr. Spell notes that it is important to remember that he recommended modified radical mastectomy only **after** Mrs. Herrington expressed her fear of recurrence and her fear of radiation treatment. Dr. Spell and two additional experts testified that the information supplied by Dr. Spell to Mrs. Herrington was within the standard of care and, in fact, exceeded the standard of care necessary to obtain the proper informed consent. Dr. Briggs Hobson testified that he also would have recommended a modified radical mastectomy to a patient like Mrs. Herrington and gave a detailed explanation. He further agreed that a one-step procedure is within the acceptable standard of care and that this area of treatment is still in controversy. Also, Dr. Ralph Didlake, a professor at the University of Mississippi School of Medicine, agreed that the recommendation for mastectomy was absolutely appropriate and that the one-step procedure was within the standard of care.

¶10. The relevant consideration for purposes of the present issue, however, is whether or not there arose a duty to inform based on the patient's needs, rather than on the applicable standards of care in the medical profession. The aforementioned testimony is more relevant for the purposes of the "professional" standard of care which this Court has rejected than for the "objective patient-need" standard which this Court has adopted. *Reikes*, 471 So.2d at 392. Nevertheless, this Court concludes that there is substantial evidence supporting the trial court's verdict under either standard of care. This Court places considerable weight on the testimony of Dr. Spell's experts that, there was no way for the doctor or the patient to know whether the lesion in question was multicentric without removing the entire breast tissue.

¶11. Dr. George Sturgis, a pathologist who examined Mrs. Herrington's tissue, testified that there was a great danger of multicentricity in lesions such as Mrs. Herrington's. This means that there might have been another site of the tumor within the breast that was not visible on the mammogram. Dr. Sturgis testified that the only way to eradicate such a multicentric lesion would be to remove the entire breast. This testimony on multicentricity and recurrence was confirmed by Dr. Didlake and Dr. Hobson. In the view of this Court, this testimony constitutes substantial evidence in support of a conclusion that Dr. Spell met his duty to inform under the objective patient-need standard.

¶12. It is apparent that a jury issue was raised on all of the Herringtons' claims. It was a classic case of conflicting testimony where it becomes the jury's role to decide the truth. On appeal, this Court must give deference to the factual conclusions reached by the jury. Findings of fact supported by credible evidence may not be set aside on appeal. *Allgood v. Allgood*, 473 So. 2d 416 (Miss. 1985). Because there was substantial evidence supporting the jury's verdict, the lower court correctly denied a peremptory instruction and the motion for a judgment notwithstanding the verdict.

¶13. The Herringtons also contend that it was reversible error to deny instructions P-1 and P-8. P-1 is the peremptory instruction which would have required the jury to find for both Mr. and Mrs. Herrington against Dr. Spell. As set forth above, there was conflicting testimony regarding the events surrounding Mrs. Herrington's surgery and also regarding the standard of care to be applied to patients such as Mrs. Herrington. That conflicting testimony was resolved in Dr. Spell's favor, and the jury's verdict should not be disturbed on appeal.

¶14. Additionally, the peremptory instruction submitted by the Herringtons requires a verdict for both of them. They did not offer separate peremptory instructions. Even assuming that separate instructions were offered, a peremptory instruction for either Mr. or Mrs. Herrington was improper. Even if the jury had found in Mrs. Herrington's favor, they could have found against Mr. Herrington. The testimony was adequate at trial to show that his relations with Mrs. Herrington were strained at best. There was even testimony from one of the Herringtons' own witnesses that the Herringtons were not living together at the time of trial.

¶15. The Herringtons also contend that the court was in error in denying instruction P-8. That instruction is erroneous and thus the court did not err. It says that permission to surgery must be given prior to admission to the hospital. There is no law to support this position. Further, that instruction also requires that the jury find for Mr. Herrington if it finds for Mrs. Herrington. Under the circumstances of this case, it would have been reasonable for a jury to find that, even if Mrs. Herrington had been entitled to damages, Mr. Herrington was not.

¶16. The thrust of instruction P-8 is that, if Mrs. Herrington had been under the effect of drugs so that she was rendered incapable of giving informed consent, then the jury should find for her. Two instructions were given on that issue -- Instruction 8-B and Instruction 8-A. Instruction P-8 states incorrect law and is also redundant. Jury instructions are not to be looked at individually. Rather, this Court will look to the instructions as a whole. *Munford, Inc. v. Fleming*, 597 So. 2d 1282 (Miss. 1992). Thus, the lower court was not in error in refusing to grant those instructions.

## Issue III

¶17. The Herringtons assert that the lower court erred in granting Instruction D-17 because it was in

effect a peremptory instruction. This instruction stated that a reasonable person, advised of the option of lumpectomy, "would have chosen modified radical mastectomy." The Herringtons argue that two alternatives -- a lumpectomy and a modified radical mastectomy -- were available to Mrs. Herrington and thus, the instruction was peremptory. Instead, the Herringtons argue that P-7(C) and P-8(B) should have been granted. These instructions required that the Plaintiff prove that a reasonable person "would have considered choosing any of the feasible alternatives."

¶18. However, Dr. Spell states in his brief that P-7(C) was given, but with modifications. The Herringtons merely wanted the language "or would have considered choosing any of the feasible alternatives" included. This would have resulted in an erroneous instruction. It would have allowed the jury to find for the Herringtons if a reasonable person "would have considered" an alternative course of treatment. This, however, is not the issue. The issue is whether a reasonable person would have consented to the treatment given if she had known of alternative treatments. *See Phillips by and through Phillips v. Hull*, 516 So. 2d 488 (Miss. 1987).

¶19. In *Hull*, we discussed the history of informed consent and again stated the test as an objective test of causation. We further set forth some guidelines to aid the physician and attorney.

> Over the 20-odd years since the term informed consent came into usage in the medicolegal context, courts have been developing, on a case-by-case basis, a list of items requiring disclosure. Stated in simple, generic terms, the list includes:
>
> (1) diagnosis (i.e., the patient's condition or problem)
>
> (2) nature and purpose of the proposed treatment
>
> (3) risks and consequences of the proposed treatment
>
> (4) probability that the proposed treatment will be successful
>
> (5) **feasible treatment alternatives**
>
> (6) prognosis if the proposed treatment is not given
>
> Obviously, the applicability of each of the items on the list may shift from case to case, depending upon the particular facts. Nevertheless, the list has value as a disclosure checklist for the practitioner as well as a starting point for closer discussion of the several items.

*Hull*, 516 So. 2d at 493 (quoting P. Lasky, 11B Hospital Law Manual; Consent to Medical and Surgical Procedures 1, 38-39 (1986))(emphasis added).

¶20. In another lengthy discussion on the informed consent issue, Justice Prather, in the case of *Palmer v. Biloxi Regional Medical Ctr., Inc.*, 564 So. 2d 1346, 1364 (Miss. 1990), stated:

> Once proof of duty and breach of that duty is provided, the Plaintiff is required to produce evidence of two sub elements of causation. First the Plaintiff must show that a reasonable patient would have withheld consent had she been properly informed of the risk, alternatives, and so forth. *Hull*, 516 So. 2d at 493 (reaffirming Mississippi's adoption of the objective test); **APPLEBAUM, LIDZ & MEISEL,** *supra*, at 121. And second, the Plaintiff must show that

the treatment was the proximate cause of the worsened condition (*i.e.*, injury).

This mandate we previously issued was embodied in Instruction P-7(C) as it was modified.

¶21. The Herringtons assert that their case is one of first impression in Mississippi and thus, the precedent of this Court is not controlling. Instead, they argue that we should adopt Pennsylvania law. They cite as authority ***Gouse v. Cassel***, 615 A.2d 331 (Pa. 1992). In that case, the Pennsylvania court determined that a plaintiff can be compensated for lack of informed consent as long as the patient proves that he was not advised of alternatives which a reasonable person would have considered significant. This simply is not the law in Mississippi. Nor is the Herringtons' case one of first impression that might cause us to change the law.

¶22. Numerous instructions were given on the issue of informed consent. Taken together, the jury was properly informed that Dr. Spell had an obligation to advise Mrs. Herrington of alternative treatments. As we have held, any questioned jury instruction will be reviewed in light of all the other instructions. ***Munford, Inc. v. Fleming***, 597 So. 2d 1282 (Miss. 1992). Applying the test in Mississippi, the objective causation test, there was ample testimony in the record that reasonable persons in Mrs. Herrington's position would have chosen a modified radical mastectomy. This assignment of error is without merit.

### Issue IV

¶23. The Herringtons assert that allowing patients of the defendant and a witness to sit on the jury constitutes reversible error. Juror Jensie McLean was identified as a former patient of Dr. Spell. When challenged for cause, Judge Goza denied that cause challenge. Juror Connie Bass was numbered 17 on the jury list. She was identified as Dr. Hull's patient. The Herringtons' attorney challenged her as, "number 18, Dr. Hull is her doctor." The Herringtons' attorney obviously made a misstatement regarding the juror's number, but the substance of the objection was made to the judge when he said, "Dr. Hull is her doctor." Judge Goza denied the challenge for cause.

¶24. The record on voir dire (R.9) shows that Connie Bass, Juror No. 17. acknowledged that she was a patient of Dr. Spell, but that her relationship would in no way "affect her." Later during voir dire, the trial court had prospective jurors who had been treated by Dr. Spell at a bench conference held "off [the] record." (R.10). Among those prospective jurors was Jensie McLean, Juror No. 22. No record was made of this bench conference. The appellants' attorney challenged for cause at the conclusion of voir dire (R.19) Juror No. 22, Jensie McLean. The judge responded, "I think the bench conference covered the fact that even though she had been a patient, it would not influence her decision in this case. Denied."

¶25. The Court has directed that court reporters should preserve at-the-bench or chambers conference, and that the trial judge is responsible to enforce this directive. ***Doby v. State***, 557 So. 2d 553, 557, 147 (Miss. 1990); ***Suan v. State***, 511 So. 2d 144, 47 (Miss. 1987). It is the appellants' burden to furnish the record. ***Goodson v. State***, 566 So. 2d 1142, 1153 (Miss. 1990). Without the testimony of the bench conference, this Court is unable to evaluate the judge's ruling in light of the jurors responses. The loss of information may have revealed an error, but without the appellants' assuming their obligation to furnish a complete record, this Court finds no reversible error on this assignment.

¶26. Furthermore, the Herringtons argue that they were forced to exercise all their peremptory challenges available. It is implicit in appellants' brief that the peremptories were used to challenge patients and former patients of the defendant and other doctors testifying. However, Dr. Spell notes in his brief that this is not true, which is suppported by the record. Appellant' attorney exercised peremptory challenges to jurors 1, 13, 15, and 19. None of these jurors were shown in any way to be connected to either Dr. Spell, Dr. Hull, or the medical profession. None of these jurors indicated during voir dire any propensity to favor the defendant in a malpractice case. However, these were the jurors Mr. Williamson chose to excuse rather than the two of which he complains.

¶27. The lower court did not commit reversible error by allowing the two jurors, Bass and McLean, who knew Dr. Hull or Dr. Spell to sit on the jury. This assignment is without error.

### Issue V

¶28. The Herringtons assert that the trial court interjected itself into the trial from voir dire and opening statement to the conclusion of the trial much to the prejudice of the Herringtons. The first assignment of error is that the judge interjected himself by instructing jurors during voir dire. It is not unusual or error for the judge to give explanations of the law or lend assistance during voir dire. Furthermore, the Herringtons did not cite any authority for their proposition that this was error.

¶29. The Herringtons also cite an instance where the judge advised the jury that a remark by defense counsel was inappropriate but unintentional. Looking to the entire remark made by the judge rather than the excerpt provided by the Herringtons, it is apparent that the court properly advised the jury that such comments were not to be made again. Additionally, a reading of the comments made by Mrs. Herrington to defense counsel shows why the defense statement was made. Mrs. Herrington requested that defense counsel read an entire page of records that the court had determined could not be read in its entirety, leaving the jury with the impression that defense counsel was attempting to hide something.

¶30. In support of the Herringtons' contentions, they cite *Nichols v. Munn*, 565 So. 2d 1132 (Miss. 1990), where we held that the trial court should be very careful in making sure that by its interjection it does not take the rights of advocacy away from the parties nor appear to take sides in the case. However, again the Herringtons rely upon a clearly distinguishable case. In *Nichols*, the trial court, in the presence of the jury, instructed a witness to take time to answer a question, stating, "I find it quite frankly, incredible, that you wouldn't remember that you had an accident." *Nichols*, 565 So. 2d at 1134. In the present case, the court did make an effort to move the trial along but never made any comments regarding credibility of the evidence. The trial court never at any time treated Mr. and Mrs. Herrington with anything other than respect.

¶31. Finally, the Herringtons contend that the lower court committed reversible error by limiting opening statement to five minutes and voir dire to ten minutes. However, the trial court is given considerable latitude in such matters. *See West v. State*, 485 So. 2d 681 (Miss. 1985), *cert. denied*, 479 U.S. 983 (1986); *Carr v. State*, 208 So. 2d 886 (Miss. 1968). Additionally, the local circuit court rules specify no longer than a fifteen minute voir dire. Miss. Unif. Cir. Ct. Rule 3.02.

¶32. We have repeatedly held that the trial court is responsible for the conduct of attorneys during trial. In *Lyle v. Johnson*, 126 So. 2d 266 (Miss. 1961), this Court further held that if counsel is to

later complain of abuse by the trial court, he must not only object, but make a motion for a new trial. This, the Herringtons' counsel did not do. Thus, this assignment of error is without merit.

## Issue VI

¶33. The Herringtons now contend that reversible error was committed because the jury was not informed as requested in plaintiffs' instruction P-7(A). The court refused that instruction finding that it was repetitious. The same duty is explained in Instruction No. 4, another of the plaintiffs' instructions, which was given. Instruction No. 4 does not mention the duty to have a practical working knowledge of "specialized services or facilities which may be available in larger communities of the United States of America," but there was no testimony offered on behalf of the plaintiffs that any specialized services or facilities were necessitated in Mrs. Herrington's case. Dr. Spell did testify that he offered Mrs. Herrington the option for a second opinion.

¶34. After a careful review of the record, it seems that Dr. Spell is correct. Jury instructions are looked to as a whole. Again, the jury was properly instructed. Thus, this assignment of error is without merit and must fail.

## Issue VII

¶35. The Herringtons argue that the trial court erred by allowing references to social security disability records during Mrs. Herrington's testimony. It is their contention that the social security disability or records pertaining to it and medical records were not relevant under M.R.E. 401 and should not have been allowed. These records were not introduced at trial, it should be noted. Rather the court allowed defense counsel to refresh Mrs. Herrington's memory with them.

¶36. Because a prime issue before the jury was the credibility of the witnesses (Mrs. Herrington and Dr. Spell both offered conflicting statements regarding what had happened between them and what was discussed between them prior to the surgery), it was certainly relevant to question Mrs. Herrington regarding her mental status. Mrs. Herrington initially testified that her health was fine as of December 1988, except for bladder problems. Mrs. Herrington also testified that she had no memory of the morning of the surgery. With that testimony, it was appropriate to attempt to refresh Mrs. Herrington's memory regarding problems with memory loss in her past.

¶37. In *Livingston v. State*, 525 So. 2d 1300 (Miss. 1988), this Court held that even documents which were inadmissible at trial because of discovery violations could be used to refresh the memory of a witness. In the case at bar, there was no discovery violation, and the records that were used to refresh Mrs. Herrington's memory were argued by counsel for the plaintiffs to be inadmissible because they were irrelevant. There was no objection to the authenticity of those records.

¶38. The court refused to allow the Herringtons to subpoena Dr. Spell's records because it would have been overly burdensome. This too, the Herringtons argue, was error. However, Dr. Spell asserted his physician/patient privilege. Surely, the Herringtons did not expect to see all of Dr. Spell's records on his other patients. The lower court was not in error in denying this evidentiary request.

¶39. As another evidentiary error, the Herringtons assert that the lower court allowed the reference to an undiscovered treatise by Dr. Spell's experts, but would not allow the Herringtons to adduce

information before the jury that Dr. Romsdahl, the Herringtons' expert surgical oncologist, had been named as one of the ten best cancer doctors in the United States by *Good Housekeeping*, nor allow the Herringtons to present the jury with either of his expert cancer doctor's curriculum vitae.

¶40. However, in the Herringtons' Interrogatories, number 20 to Dr. Spell asked for sources which Dr. Spell considered authoritative. That interrogatory was addressed to Dr. Spell directly and not phrased to require defense counsel to produce any documentary material which might be offered by any of its experts at trial. Thus, the alleged "undiscovered treatise" was not even requested. Furthermore, the amount of evidence introduced makes any reference to this treatise cumulative and not prejudicial to the Herringtons. In regards to the ruling by the lower court that the evidence in *Good Housekeeping* would be kept out, the lower court surely was not in error in its judgment. That magazine is certainly not an authoritative source and is not even a scientific source. The court acted within its discretion in excluding such testimony. Nor was it error to exclude the curriculum vitae. The Herringtons were given ample opportunity to have Dr. Romsdahl bolster his qualifications through questions qualifying him as an expert.

¶41. The Herringtons' final assignment of evidentiary errors is that Judge Goza sustained, in limine, the defendant's objection to hearsay testimony from the Herringtons' friends and close relatives regarding Mrs. Herrington's statements after her visit with Dr. Spell but before her hospitalization. The evidence went toward Mrs. Herrington's intent and understanding that she was only to have a biopsy and the Herringtons argue that Mrs. Herrington's statements were admissible under M.R.E. 803(3) as an exception to hearsay to show state of mind.

¶42. Both parties note that the lower court reversed its ruling and allowed the Herringtons to recall all witnesses on the point, except for Mr. Herrington. The Herringtons did call to the stand Pat Renauldo, who was allowed to give the testimony which the Herringtons had sought to introduce through other witnesses. When offered the opportunity to recall three witnesses, counsel for the Herringtons indicated that he did not have time to call two of the witnesses and that one had gone back to Memphis. The two local witnesses, Brenda Langford and Teresa Cauley, could have been called, but counsel for the Herringtons decided not to do so. At no time did the Herringtons move for a mistrial on the issue or any motion for additional time to bring those witnesses back. By failing to recall the witnesses, move for a mistrial, move for a continuance, or take action of some sort, the Herringtons have waived any error. *See Estate of Reinecke v. White*, 83 So. 2d 438 (Miss. 1955).

## Issue VIII

¶43. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. *Thornhill v. State*, 561 So. 2d 1025, 1030 (Miss. 1989). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. *Benson v. State*, 551 So. 2d 188, 193 (Miss. 1989) (**citing** *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987)).

¶44. The case at bar may be quite succinctly summarized by stating that it was a "swearing match." There was definitely a jury question as to what sort of information Mrs. Herrington received. The jury has spoken and this Court will not overturn a jury verdict unless clearly erroneous. The

overwhelming weight of evidence was not present on either side. It was a factual determination that was made properly by the jury. The lower court did not err in failing to award a new trial to the Herringtons.

## Issue IX

¶45. The only real argument made by the Herringtons to support this proposition is found in the following paragraph taken from their brief at page 47:

> Punitive damages are allowable in cases of gross negligence, *Mutual Life Insurance Co. of New York v. Estate of Wesson by Hall*, 517 So. 2d 521 (Miss. 1987); punitive damages are allowable for oppressive and intentional misconduct, *Defenbaugh and Co. of Leland, Inc. v. Rogers, by and through Thompson*, 543 So. 2d 1164 (Miss. 1989); punitive damages are allowable for battery, *Strickland v. Rossini*, 589 So. 2d 1268 (Miss. 1991). In our society, no one is above the law, even Dr. Spell is subject to the law of punitive damages. Therefore, upon reversal of this case, this Honorable Court should refer the case for reconsideration not only on the issue of actual damages but, also on the issue of punitive damages.

¶46. Dr. Spell notes in his brief that punitive damages are not recoverable if no actual damages are allowed. *Allen v. Ritter*, 235 So. 2d 253 (Miss. 1970). It certainly was not error for the lower court to rule that the jury would not consider punitive damages when they had denied actual damages. Thus, this assignment of error is without merit.

## CONCLUSION

¶47. The judgment and decisions in the lower court were not erroneous. There was conflicting testimony between Mrs. Herrington and Dr. Spell. This is the classic situation which presents issues of fact for a jury to consider. The jury, after having heard all the evidence, properly considered those issues and resolved all issues in Dr. Spell's favor.

**¶48. AFFIRMED.**

**LEE, C.J., PRATHER, P.J., ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. BANKS AND SMITH, JJ., NOT PARTICIPATING.**


**McRAE, JUSTICE, DISSENTING:**

¶49. Allowing one of Dr. Spell's current patients and one of his former patients to remain on the jury constituted reversible error in this case. *See Hudson v. Taleff*, 546 So. 2d 359, 363 (Miss. 1989) (holding that jury was not impartial where court refused challenges for cause of two jurors with connections to defendant doctor). The trial judge in this case erroneously denied plaintiffs' challenge for cause where these jurors, by their relationships to the defendant, were clearly shown to be biased in the matter.

> Our implicit, if not explicit, holding in *Hudson* is that the circuit judge's discretion in determining a juror's qualification where a reasonable challenge has been made is considerably

narrowed where, without great inconvenience, other prospective jurors may be readily summoned. When a rational challenge is made by a party to a prospective juror, and other jurors against whom no challenge is made are available, the circuit judge should ordinarily excuse the challenged juror.

*Scott v. Ball*, 595 So. 2d 848, 849-50 (Miss. 1992).

¶50. The judge's reason for allowing juror Connie Bass was that Bass said, regardless of the doctor-patient relationship with Dr. Spell, that she could be fair. However, there could be no presumption of fairness when Bass expected to see him again. Further, to allow a former patient of the defendant doctor to remain on the jury is also clearly reversible error. The majority's position is that this Court is unable to evaluate the judge's ruling in light of the jurors' responses in an "off the record" bench conference. However, in response to the plaintiffs' challenge of juror Jensie McLean for cause, the judge himself noted, "I think the bench conference covered the fact that even though she had been a patient, it would not influence her decision in this case." This is sufficient information for this Court to determine that the judge's ruling was erroneous.

¶51. The error in failing to disqualify the jurors was intensified by the fact that the outcome of the trial hinged on the credibility of Dr. Hull and Dr. Spell versus the credibility of Mrs. Herrington. It is troublesome that the majority employs a faulty legal analysis of this assignment by considering the reasons earlier peremptory challenges were exercised while overlooking the fact that the plaintiffs did indeed exhaust all of their peremptory challenges. Such an analysis by the majority overlooks the real issue and defeats the very nature and purpose of the peremptory challenge.

¶52. Additionally, Miss. Unif.Cir.Ct.Rule 3.02, which limits voir dire to fifteen minutes, is an absurd rule which should have been abolished a long time ago. An impartial jury cannot reasonably be obtained in this time frame. This Court has implicitly agreed to this suggestion of error in its promulgation of Rule 3.05 of the Uniform Rules of Circuit and County Court Practice, which replaces the fifteen minute voir dire with a time period that is "reasonable." Perhaps the faultiness of the fifteen-minute "hurry-up" drill for voir dire should be blamed for the hasty decisions of the trial judge and attorneys.

¶53. In conclusion, it should not matter that the plaintiffs acted within their rights by striking certain jurors. What should matter is that the trial judge allowed prospective jurors to remain on the panel, knowing that these particular jurors were former and current patients of the defendant. It is for these reasons that I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**