James E. STANFORD, Plaintiff,

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.**

Civ. A. No. EC 91–60–D–D.

United States District Court, N.D. Mississippi, E.D.

May 22, 1992.

---

Barbara Tutor, Oxford, MS, for plaintiff.

Taylor B. Smith, Columbus, MS, for defendant.

*MEMORANDUM OPINION*

DAVIDSON, District Judge.

This is a civil action arising out of injuries allegedly sustained by the plaintiff when the trailer truck he was driving was hit by a train at a railroad crossing in Union County, Mississippi. This particular matter is before the court on defendant's motion for partial summary judgment or in limine. Defendant contends that due to the preemptive force of the Federal Railroad Safety Act, 45 U.S.C. § 421, *et seq.*, and the Federal Highway Safety Act, 23 U.S.C. §§ 101 & 401, *et seq.*, it

had no duty to install warning devices at the crossing in question and no duty concerning speed at the time of the accident beyond those set forth in federal regulations.[1]

Alternatively, defendant requests that this court enter an order prohibiting the plaintiff and his counsel from commenting on defendant's duty to provide additional warning devices or mentioning or putting forth testimony on the speed of the train. Although the court finds that the matter is more properly considered a motion in limine rather than a motion for partial summary judgment, it takes up defendant's arguments today rather than on the eve of trial because of the complexity and importance of the issues presented. Although some additional argument at trial will be permitted on each of the issues, this opinion will hopefully narrow and clarify the court's concerns.

1. Federal Preemption Generally

In traditional areas of state interest such as tort law, preemption does not occur unless the intent of Congress is "clear and manifest." *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1552 & 1555 n. 4 (11th Cir.1991); *Missouri Pacific Railroad Company v. Railroad Commission of Texas*, 833 F.2d 570, 572–73 (5th Cir.1987) (citations omitted) [hereinafter *Missouri Pacific I*]. Thus, "[t]he first inquiry is 'whether Congress explicitly or implicitly declared that the states are prohibited from regulating' precise areas to which state regulations apply." *Missouri Pacific I*, 833 F.2d at 573 (citation omitted). Of particular concern in this case is Section 434 of the Federal Railroad Safety Act which provides:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order or standard *covering the subject matter* of such State requirement. A State may adopt or continue

---

1. Although defendant rather vaguely requests summary judgment "relative to the train speed at the time of the accident," the court interprets this request as an argument that defendant had no duty beyond that prescribed by federal law.

in force an additional or more stringent law, rule, regulation, order or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434 (1986) (emphasis added). Addressing this same section in *Missouri Pacific I*, the Fifth Circuit held that the section specifically creates national railway safety standards with preemptive force, but at the same time, preserves a regulatory position for the states in two areas: 1) where no federal standard has yet been adopted covering the subject matter of the state regulation; or 2) where the regulation is necessary to eliminate or reduce an essentially local safety hazard. *Id.* at 573. The Fifth Circuit reiterated this interpretation of Section 434 in the same case after remand four years later. *See Missouri Pacific Railroad Company v. Railroad Commission of Texas*, 948 F.2d 179, 182–83 (5th Cir.1991) [hereinafter *Missouri Pacific II* ].

■ Defendant contends that the Fifth Circuit has adopted a view of the Railroad Safety Act that is "broadly" or "totally" preemptive, but a closer reading of the above cases shows that the court declined to see "a total preemptive intent." *See Missouri Pacific I*, 833 F.2d at 573.[2] Instead, in deter-

mining whether the first of the above two exceptions applied, the court adopted an approach of "pragmatically" comparing the state and federal regulations to see if the two covered the same subject matter. *Missouri Pacific I*, 833 F.2d at 573. Where, for example, a state provision attempted to regulate walkways alongside railroad tracks, the court held that the regulation would be preempted under Section 434 because the state provision attempted to "add to the [Federal Railway Administration's] basic track construction regulations" or "impair ... the [Administration's] basic superintendence of that field." *Missouri Pacific II*, 948 F.2d at 184; *Missouri Pacific*, 833 F.2d at 575 n. 5; Where, on the other hand, a state only sought to regulate walkway safety by requiring railroads to post signs wherever the walkways were slippery or obstructed, this would not be preempted. *Missouri Pacific I*, 833 F.2d at 575 n. 5.[3]

■ This brings the court to the factual situation at hand. The instant case differs factually from both *Missouri Pacific* cases and another Fifth Circuit case cited by defendant, *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1112 (5th Cir.1973), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973), because the case does not involve an outright attempt by state officials to regulate the railroads.[4] Instead, the

**2.** Defendant looks particularly to a third *Missouri Pacific* case, which was a companion case to *Missouri Pacific I* and *Missouri Pacific II*. *See Missouri Pacific Railroad v. Railroad Commission of Texas*, 850 F.2d 264, 265 (5th Cir.1988), *cert. denied*, 488 U.S. 1009, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989). That case held that a Texas code provision requiring a caboose or alternative safety equipment on trains traveling through Texas was preempted by federal regulations. The case focused on caboose regulations and did not purport to adopt a total preemptive view in all areas of railroad safety. *See id.* at 267.

**3.** Although the court used the slippery sign example as a hypothetical to show how state and federal regulations might not cover the same subject matter, the hypothetical shows that the preemptive brush is not all-encompassing.

**4.** Indeed, in the *Donelon* case, the court, after finding that Louisiana parish officials were without authority under the Federal Railroad Safety Act to require a railroad to meet certain safety standards, went on to state that it was making no

determination about any suits litigants might wish to bring under the common law. *Id.* at 1113. Many of the other cases cited by the defendant in support of complete preemption involve similar situations of state action. *See, e.g., Norfolk & Western Railway Co. v. Public Utilities Commission*, 926 F.2d 567, 570 (6th Cir.1991) (Public Utilities Commission of Ohio could not order railroad to provide walkways and railings); *National Association of Regulatory Commissioners v. Coleman*, 542 F.2d 11, 13 (3rd Cir.1976) (Railroad Safety Act authorizes preemption of state accident reporting regulations). Although Section 434 does not distinguish between state common law and statutory remedies, an open question exists as to the sweep of the preemptive brush when common law remedies are in issue, especially since the Fifth Circuit has declined to read the Railroad Safety Act as evincing a total preemptive intent. Because the above cases do not answer the difficult question of when the act fully preempts a plaintiff's rights under the common law, they are only marginally helpful.

case before the court involves a plaintiff's attempt to seek traditional tort remedies despite the preemptive regulations imposed by Congress. In defendant's view, the preemptive effect of the FRSA is so strong that it effectively relieves railroads of any traditional duty regarding grade crossings and train speeds. However, the court finds that the Eleventh Circuit case in *Easterwood,* 933 F.2d at 1548, offers a more reasoned analysis and a better result.

*Easterwood* involved a wrongful death claim brought by plaintiff's decedent after the long bed truck he was driving was struck by a CSX train. Plaintiff alleged that the train company was negligent for three reasons: first, for failing to maintain vegetation at the crossing; second, for failing to install adequate warning signals; and third, for failing to maintain a reasonable speed. Thus, the last two claims are identical to those the court faces in the instant case. In discussing preemption in general, the *Easterwood* court first noted that Congress specifically intended that railroad laws be uniform and authorized the Secretary of Transportation to prescribe appropriate standards. *Id.* at 1553 (referring to 45 U.S.C.A. §§ 421 & 431(a)(1)). The court also recognized the two previously discussed exceptions to uniformity. Noting that the second exception—permitting states to adopt more stringent rules to eliminate a local safety hazard—was inapplicable in an analysis of a general duty of care in a tort case,[5] the court analyzed each of plaintiff's negligence claims to see whether any survived under the first exception. Accordingly, the court considered whether any claim covered a subject matter different from a rule already adopted by the Secretary of Transportation.[6]

Although defendant views *Easterwood* as an aberration and contends that the case "overlooked" numerous decisions, including the Fifth Circuit *Donelon* decision, the court finds *Easterwood* to be extremely helpful to these particular facts. Not only is the *Easterwood* approach much like the "pragmatic," comparative approach followed by the Fifth Circuit in *Missouri Pacific I,* it respects traditional tort doctrine to the extent possible in those few areas where Congress or a federal policymaker has not acted. The court also finds that *Easterwood,* an opinion from a close sister circuit to the Fifth Circuit for the past ten years,[7] is more authoritative than the district court cases defendant cites with similar fact patterns. *See, e.g., Armijo v. Atchison,* 754 F.Supp. 1526 (D.N.M.1990) (claim that railroad was negligent in failing to install warning devices was preempted by Railroad Safety Act); *Conner v. Missouri Pacific Railroad Co.,* No. 90–C–562E (N.D.Okla. Mar. 13, 1991) (in claim by plaintiff that defendant was liable for inadequate warning devices, court found that facts of case did not fit within the narrow exception to preemption carved out by Congress).[8] Accordingly, with *Easterwood* in hand, the court proceeds to a discussion of plaintiff's individual claims concerning grade crossing and train speed.

### 2. The Grade Crossing Claim

"While the legislative history of the Federal Railroad Safety Act evinces a strong concern about the hundreds of annual deaths in grade crossing accidents, neither the Act nor the regulations specifically address the problem through federal regulations of the signals and the design of grade crossings." *Easterwood,* 933 F.2d at 1555. Instead, Congress has addressed the grade crossing problem in a chapter of the code dealing with federal aid for highway projects. *Id.* (referring to 23 U.S.C. § 130 (1990); 23 C.F.R. § 646.214(b)(1) (1990)). To be eligible for

---

5. *See id.* at 1553 n. 3.

6. The court noted that even in the area of explicit preemption, the scope of the preemption must be "narrowly tailor[ed] ... to match congressional intent." *Id.* at 1552 & 1553.

7. By this, the court naturally refers to the division of the former Fifth Circuit on October 1, 1981 to create the new Fifth and Eleventh Circuits.

8. While these district court cases from other states support defendant's position, a United States District Court case from the Southern District of Mississippi supports the result the court reaches here. *See Esters v. Seaboard System Railroad,* No. S 85–0945 (NG) (S.D.Miss. Aug. 26, 1987).

federal funding for improvements, the Highway Safety Act requires that each state conduct a survey of all railroad crossings and implement a schedule for bringing the grade crossings in compliance with a federally-promulgated Manual on Uniform Traffic Control Devices for Streets and Highways. *Id.*

This court has little to add to *Easterwood*'s analysis of 23 U.S.C. § 130 and its holding that the section does not explicitly or implicitly pre-empt all state law concerning warnings at grade crossings. *Id.* at 1555.[9] The fact that a federal manual exists and that states have agreed to prioritize gate crossings does not automatically create preemption. Instead, the relevant inquiry is whether a federally designated policymaker in Mississippi has acted with regard to this particular crossing by either upgrading it or affirmatively deciding that it is adequate. *See id.* at 1556. If the state has as yet made no decision with regard to this particular crossing, the "failure to act [will be] insufficient to constitute preemption" and state common-law liabilities will apply. *See id.* at 1555–56.[10]

In this case, the particular crossing where plaintiff was struck has been denominated as DOT668–282–M. Standard reflectorized crossbuck signs guarded the track,[11] but the grade crossing was apparently unprotected by flashing lights, gates or other warning signals. Both the plaintiff and the defendant have provided separate affidavits from Mississippi State Highway Department Transportation Planning Engineer Lowell T. Livingston which speak of Mississippi's adoption of the Manual on Uniform Traffic Control Devices and Mississippi's implementation of a priority list for grade crossings. However, the affidavits do not answer the precise question of whether the Department of Transportation has acted with regard to this particular crossing. The last paragraph of plaintiff's version of the Livingston affidavit suggests that no decision has been made with regard to this crossing,[12] but the statement is too unclear for the court to make a ruling at this juncture.[13] Accordingly, before the start of trial the parties will be permitted to make arguments in the nature of a motion in limine regarding the *limited question* of whether a state policymaker has made a decision regarding this crossing.[14] In keeping with the *Easterwood* analysis, a "decision" means a determination to upgrade the crossing or an affirmative determination that the existing crossing is adequate.

■ As an alternative argument, defendant contends that even if state law is not preempted, plaintiff's negligent crossing claim must still fail because defendant met the requirements for standard crossings under Mississippi law. Defendant refers specifically to Miss. Code Ann. § 77–9–247 (1989) and *Wilner v. Mississippi Export Railroad Co,* 546 So.2d 678 (Miss.1989). Section 77–9–247 requires railroads to erect a standardized crossbuck as defined by the Manual on Uniform Traffic Control devices

---

9. The court has considered and rejects defendant's contention that the Eleventh Circuit ignored 45 U.S.C. § 434 and 49 C.F.R. 1.48. Instead, the court finds that the opinion offers a well reasoned analysis of the interplay of the Federal Highway Acts and the Federal Railroad Safety Act.

10. The *Easterwood* court relied on *Missouri Pacific I* to find that a state policymaker's failure to act with regard to a particular crossing was qualitatively different from a policymaker's decision not to act. *See id.* at 1555–56 (referring to *Missouri Pacific I,* 833 F.2d at 576).

11. Deposition of Wayne Smitherman, p. 20. Plaintiff has not provided evidence to refute this testimony.

12. The paragraph in plaintiff's version of the Livingston affidavit states:

> The fact that signalization at a particular crossing has not been upgraded by the use of federal funds or that the crossing is not on the ranked list of selected crossings slated to be improved in a given year does not constitute a decision by the Highway Department that the crossing is safe or that it is not ultrahazardous.

13. Because the court does not rely on the Livingston affidavit in reaching its decision, the court finds that it is unnecessary to consider defendant's motion to strike part of that affidavit.

14. Although *Easterwood* did not need to reach the question of whether a decision by a federally-designated policymaker would insulate the railroad from common law liabilities because of the absence of such a decision in that case, this court holds that where a federally-designated policymaker has acted, preemption will apply.

and further provides that each crossbuck shall be "reflectorized" and "placed in the right side of the road or street on both sides of the railroad and shall indicate the number of tracks crossing the road or street in accordance with the aforesaid manual ..." In considering this statute, the Mississippi Supreme Court in *Wilner* found that "in the exercise of reasonable care, the defendant railroad gave all the warning of the crossing required by law." *Id.* at 682.[15] Defendant contends that this holding absolves a railroad from liability anytime it has installed the standard crossbuck, while plaintiff contends that the holding recognizes a common law duty of reasonable care which may or may not be met by complying with the crossbuck statute. Because the sentence cited above refers to "the exercise of reasonable care" and "all the warning ... required by law," both interpretations are plausible. Because summary judgment is ordinarily improper where issues require the determination of the reasonableness of a defendant's acts, *see Matthews v. Ashland Chemical Inc.*, 703 F.2d 921, 925 (5th Cir.1983), and because the holding of *Wilner* is not clear, the court hesitates to grant defendant's request for partial summary judgment or in limine on the basis of *Wilner* alone. In the opinion of the court, the "better course" under these very unusual circumstances is "to proceed to a ... trial." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### 3. The Excessive Speed Claim

 While *Easterwood* supports the survival of plaintiff's negligent crossing claim, the same case decides in favor of preemption in the area of train speed. The Eleventh Circuit appeared to base its reasoning on the presence of specific regulations established by the Secretary of Transportation regarding the maximum speed for passenger and freight trains. *Id.* at 1553 (referring to 29 C.F.R. 213.9 (1990)). While recognizing that *Easterwood* offers authority for defendant's contention that speed should be preempted, the court has grave concerns about the public policy considerations that attend this issue. Specifically, do the Secretary's regulations on maximum train speed remove a railroad's duty to exercise reasonable care in the event of track conditions which would cause a reasonable person to act more prudently? Because of the importance of this issue, the court has decided to allow the parties to make additional arguments in the nature of a motion in limine. The parties are particularly requested to focus their arguments on negligence cases such as the one before the court.

A separate order in accordance with this memorandum opinion will be entered this day.

---

15. The issue of federal preemption was not discussed in the *Wilner* case presumably because the parties did not raise it.