James C. WOODS, Plaintiff,

v.

**AMTRAK, Illinois Central Railroad Company, E.C. Hampton, and D.E. Carlisle, Defendants.**

No. 2:96CV149–B–B.

United States District Court,
N.D. Mississippi,
Western Division.

Sept. 16, 1997.

Michael D. Greer, Greer & Pipkin, Tupelo, MS, for Plaintiff.

Glenn F. Beckham, Upshaw, Williams Biggers, Beckham & Riddick, Greenwood, MS, for Defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court upon the defendants' motion for summary judgment.[1] The court has duly considered the parties' memoranda and exhibits and is ready to rule.

### FACTS

This case arises out of a collision in Walls, Mississippi, on May 28, 1996, between plaintiff's pick-up truck and an Amtrak passenger train being operated on Illinois Central tracks. The collision occurred during daylight hours at approximately 7:30 a.m. The tracks and the crossing were elevated so that the plaintiff had to drive up and over a slight rise to cross the tracks. The crossing had passive warning devices which notified drivers of the presence of the railroad tracks. No active warning devices (such as flashing lights or gates) were present at the crossing. Pictures of the crossing and the tracks taken on the morning of the collision show that the tracks ran in a straight line as far as the eye could see (at least in the direction from which the train was approaching), and that there was no brush or high weeds alongside the track that might impair one's view of the oncoming train.

The plaintiff testified at his deposition that as he neared the crossing, he could not see whether or not traffic was approaching from the other side, and thus he did not stop at the white stop bar, but rather eased forward toward the crest of the tracks. When he finally stopped, he thought that he was clear of the tracks, but the front wheel of his truck was across the first rail. The plaintiff testified that after he had come to a stop and ascertained that there was no oncoming vehicular traffic, he looked for a train for the

first time, only to find one approximately fifty feet away. The train hit him before he could take any evasive action.

The plaintiff complains that in addition to the steep grade of the crossing, the railroad timbers between the tracks were loose so that one had to ease slowly over the tracks to avoid damage to their vehicle from the loose timbers. The plaintiff asserts that the steep grade as well as the loose timbers made this crossing extrahazardous and interfered with the plaintiff's ability to look for oncoming trains.

The plaintiff alleges that the defendant Illinois Central was negligent in that the crossing did not have proper warning signals crossing was "rough," and the crossing was elevated. The plaintiff asserts that the defendant Amtrak and the individual defendants were negligent in operating the train at an excessive rate of speed, failing to sound a warning with a horn or whistle, failing to keep a proper lookout, and failing to apply the train's brakes in a timely fashion. The defendants have moved for summary judgment on all issues except the alleged failure to sound a horn or whistle, upon which the defendants concede there is a genuine issue of material fact.

### LAW

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

---

1. The defendants have filed a joint motion seeking complete summary judgment as to the claims asserted against the defendant Illinois Central and partial summary judgment as to the claims asserted against the defendant Amtrak and the individual defendants.

That burden is not discharged by "mere allegations or denials." Fed.R.Civ.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

## A. Excessive Speed

■ The undisputed evidence reveals that the train was travelling 65 m.p.h.—well-within the speed limit of 80 m.p.h. set for that particular portion of track. Claims for excessive speed are preempted if the train is indisputably travelling within the federal speed limit set for that particular class of track. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 673–675, 113 S.Ct. 1732, 1742–1743, 123 L.Ed.2d 387, 402–404 (1993); *see also Wright v. Illinois Cent. R.R. Co.,* 868 F.Supp. 183, 186–187 (S.D.Miss.1994). Therefore, the plaintiff may not maintain any claim for negligence based upon the allegedly excessive speed of the train.

## B. Inadequate Signalization

■ Miss.Code Ann. § 77–9–247 requires railroad companies to erect and maintain a standard "railroad crossbuck" at each railroad crossing in the state of Mississippi. Railroad companies may also be required to install additional warning devices at the direction of the Mississippi Department of Transportation. Miss.Code Ann. § 65–1–175. The plaintiff has presented no evidence of any failure by the defendant Illinois Central to comply with the requirements of either § 77–9–247 or the Mississippi Department of Transportation.

The Mississippi Supreme Court addressed the issue of inadequate signalization in *Wilner v. Mississippi Export R.R. Co.,* 546 So.2d 678 (Miss.1989). In *Wilner,* the plaintiff collided with a train on a dark, foggy morning, before daylight. The crossing where the collision occurred utilized only passive warning devices to alert motorists of the presence of a railroad crossing. The plaintiff's expert testified that the crossing was extra hazardous in foggy conditions due to a lack of active warning devices.

In considering the plaintiff's claim of inadequate signalization, the Mississippi Supreme Court stated:

> The opinion of the expert that the crossing was extra hazardous does not end the inquiry. Every railroad crossing can be extra hazardous, and is potentially dangerous. . . .

> The question is whether the defendant railroad, considering the danger of the crossing, should have in the exercise of reasonable care placed more or different warnings than it did? By clear, unmistakable signs and language there was a warning of a crossing. The railroad was entitled to assume that approaching motor vehicle drivers would upon seeing the signs slow sufficiently to see whether or not a train was on or near the crossing.

*Wilner,* 546 So.2d at 681–682. The Mississippi Supreme Court pointed out that the defendant had complied with § 77–9–247 by erecting a railroad crossbuck, and that nothing about the crossing made it deceptively dangerous, or any more dangerous than the hundreds of other railroad crossings in the state. Therefore, the Mississippi Supreme Court held that the trial court should have directed a verdict for the defendant on the issue of inadequate signalization.

This court finds the decision in *Wilner* to be dispositive of this issue. The plaintiff has failed to present any evidence from which a reasonable person could find that the crossing was inadequately signalized. There were clear, unmistakable signs warning the plaintiff of the presence of the railroad tracks. Furthermore, the tracks were elevated, straight, and clear of brush and weeds, thus allowing for an unimpaired view of any oncoming trains. With clear, unmistakable

warning signs and an unimpeded view of the tracks, the railroad should be entitled to assume that motorists will exercise reasonable care to determine if a train is approaching the crossing by slowing down and looking both ways before proceeding across the tracks. The plaintiff asserts that his expert witness will state that this crossing is "hazardous" and/or "dangerous." [2] However, the court finds that, like the crossing in *Wilner*, this crossing is no more hazardous or dangerous than any other crossing in this state. Passive warning devices should have been sufficient and therefore, the plaintiff may not maintain a claim for inadequate signalization.

### C. Rough Nature of the Crossing

■ This allegation of negligence refers to the allegedly loose timbers between the tracks. The plaintiff asserts that one had to drive slowly over the tracks to avoid damage to one's car. However, the plaintiff was hit before he proceeded to cross the tracks and therefore, the loose timbers had absolutely nothing to do with the cause of this collision. The plaintiff admitted as much in his deposition. Although the plaintiff now states that he was confused in his deposition, and that the loose timbers contributed to the collision by diverting his attention away from the oncoming train, the court finds no merit in the plaintiff's argument. The allegedly loose timbers did nothing to prevent the plaintiff from seeing the oncoming train and taking appropriate action to avoid the collision.

### D. Elevated Nature of the Crossing

■ The defendant has presented undisputed evidence that this crossing has been in existence for at least twenty-nine years. Miss.Code Ann. § 15-1-41 provides that no action may be brought to recover damages arising out of any deficiency in the design, planning, supervision, or construction of an improvement to real property against any person or corporation performing or furnishing the design, planning, supervision or construction of such improvement more than six years after the actual occupancy or use of the improvement. Since the crossing has been in existence for greater than six years, the statute of repose prevents the plaintiff from asserting a cause of action against the defendant Illinois Central for negligent design of the crossing. Furthermore, there is no evidence that the elevated nature of the tracks and of the crossing played any role in causing this collision. If anything, the elevated tracks should have made the train more visible to the plaintiff. The plaintiff's argument that he could not see oncoming vehicular traffic is without merit, as the plaintiff was driving on a two-lane road with ample room for two cars travelling in opposite directions to cross the tracks simultaneously. As with the rough nature of the crossing, the elevated crossing did nothing to prevent the plaintiff from seeing the oncoming train and taking appropriate action to avoid the collision.

### E. Failure to Keep a Proper Lookout and to Timely Apply Brakes

■ The engineer testified that he saw the plaintiff's truck when the train was 1200–1500 feet from the crossing, but that he did not think that anything unusual was about to occur. When the truck came to a stop with the front wheel across the first rail, the engineer immediately applied the emergency brakes. The plaintiff has presented no evidence to support the contention that the defendants were negligent in failing to keep a proper lookout, or in failing to timely apply the brakes. The plaintiff has not presented any evidence that the engineer was not paying attention, that he should have seen the plaintiff's truck sooner, or that he could have or should have done anything differently had he seen the truck sooner. Furthermore, the engineer was entitled to assume that the plaintiff would stop for an approaching train, and thus had no duty to stop or slow the train for the approaching vehicle. *See Wilner*, 546 So.2d at 681–682 (railroad was entitled to assume that approaching motor vehicle drivers would slow sufficiently to see whether or not a train was on or near the crossing); *Gulf, Mobile & Ohio Railroad Co. v. Grubbs*, 260 So.2d 837, 839 (Miss.1972)

---

**2.** The plaintiff does not submit any affidavit or deposition testimony from his expert witness. The plaintiff merely cites to his response to interrogatories in which he informed the defendants of the expected testimony of his expert witness.

(trainmen had a right to assume vehicle would stop as required by law). The plaintiff testified in his deposition that he had slowed to a near stop at the white stop bar, but could not see over the crest of the crossing to determine if there was any oncoming vehicular traffic. He slowly drove toward the crossing until he could see across the tracks, at which time he came to a stop with his front wheel across the first rail. Under the circumstances described in the plaintiff's own testimony, no reasonable person could find that the engineer should have anticipated the plaintiff stopping on the tracks. Therefore, the plaintiff may not maintain any claim for failure to keep a proper lookout or failure to timely apply brakes.

### F. Effect of Plaintiff's Failure to Stop

 Miss.Code Ann. § 77–9–249(1) provides that whenever any person driving a vehicle approaches a railroad crossing, and an approaching train is plainly visible and is in hazardous proximity to such crossing, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of the tracks, and shall not proceed until he can do so safely. The defendant asserts that the plaintiff's violation of § 77–9–249 was the sole proximate cause of the collision, and precludes the plaintiff's recovery. The plaintiff points out that § 77–9–249(3) states that whether a violation of the statute is the sole proximate cause of the plaintiff's injury is a question of fact for the jury, and that violation of the statute does not of itself defeat recovery. In interpreting this statute, the Mississippi Supreme Court has held that violation of this statute does not preclude recovery, *so long as there is evidence of negligence on behalf of the train or railroad company as well. Mississippi Export R.R. Co. v. Clark,* 223 So.2d 542 (Miss.1969); *New Orleans & N.E. R.R. Co. v. Hegwood,* 155 Miss. 104, 124 So. 66 (1929). However, in cases where there was no evidence of negligence on behalf of the train or railroad company, the Mississippi Supreme Court has held that it is appropriate for the trial court to dismiss the action without allowing the case to go to the jury. *Illinois Cent. R.R. Co. v. Smith,* 243 Miss. 766, 140 So.2d 856 (1962) (trial court should have directed a verdict where there was no substantial evidence of negligence on the part of the defendant railroad company); *see also Wilner,* 546 So.2d at 681–682 (same). In the present case, the plaintiff has failed to present any evidence of negligence on behalf of any of the defendants so as to allow a jury issue on the application of comparative negligence, with the possible exception of failure to sound a horn or whistle. Therefore, the plaintiff's violation of § 77–9–249 precludes recovery on all claims except for the failure to sound a horn or whistle.

### CONCLUSION

For the foregoing reasons, the court finds that the defendants' motion for summary judgment should be granted. An order will issue accordingly.