**Tommy R. WILSON Plaintiff**

v.

**THE KANSAS CITY SOUTHERN RAILWAY CO. and J.R. Henderson Defendants**

**No. CIV.A. 4:01CV323LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

June 13, 2003.

---

Don O.Rogers, Wilbourn, Rogers & Scarborough, Meridian, for Plaintiff or Petitioner.

Charles E. Ross, Chad M. Knight, William B. Lovett, Jr., Wise, Carter, Child & Caraway, Jackson, James Montgomery Mars, II, Mars, Mars & Mars, Philadelphia, for Defendant or Respondent.

### MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the court on plaintiff Tommy R. Wilson's motion to reconsider this court's November 30, 2001 order denying his m motion to remand, and on the motion of Kansas City Southern Railway Company for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. These motions have been fully briefed, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to reconsider is not well taken and should be denied, and that KCS's motion for summary judgment is due to be granted.

Plaintiff Tommy Wilson filed this wrongful death action in state court against KCS and J.R. Henderson following the death of his wife in a railroad crossing accident in Hickory, Mississippi on November 2, 1999. After KCS removed the case to this court on the basis of diversity jurisdiction, charging fraudulent joinder of Henderson, plaintiff moved to remand. In its opinion denying plaintiff's motion to remand, the court concluded that the resident/non-diverse defendant Henderson, the train engineer at the time of the accident, had been fraudulently joined, as plaintiff had no possibility of recovery against him based on the law and undisputed evidence of record. In particular, the court determined that plaintiff's claim that Henderson was negligent based on his failure to slow the train due to a sight restriction was preempted by the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101, *et seq.;* [1] that plaintiff had no possibility of recovery on his claims of negligent lookout and failure to slow the train after a car entered the train crossing, or for failing to apply the brakes in a timely manner because no evidence exists supporting these claims; and finally, that plaintiff could not succeed on his claim that Henderson negligently failed to warn "because the evidence

---

**1.** *See Wilson v. Kansas City Southern Railway,* Civil Action No. 4:01CV323LN (S.D.Miss. Nov. 30, 2001).

proves conclusively that Henderson was not negligent and sounded the train's warning horn in compliance with Mississippi law." In support of the last holding, the court noted that Mississippi Code Annotated § 77-9-225 (1999) requires that all trains be equipped with a bell and whistle or horn, and requires that the train crew

> shall cause the bell to be rung or the whistle or horn to be blown at the distance of at least three hundred (300) yards from the place where the railroad crosses over any public highway or municipal street. The bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is passed.

The court noted that the affidavits of several witnesses to the accident, including Henderson, established that on the occasion of the accident at issue, "the train's bell and whistle began sounding well before the train was 300 yards away from the crossing," and that consequently, plaintiff could not succeed on his claim.

■ Plaintiff has now moved the court to reconsider its decision, asserting that he has obtained evidence tending to place fault for the wreck upon defendant Henderson. As it turns out, the affidavit prepared for Henderson's signature by counsel for KCS in connection with the motion to remand, which the court mistakenly believed had been executed by Henderson, in fact had not been signed by him. Indeed, unbeknownst to the court, Henderson had expressly declined to sign the affidavit, taking the position that it did not in all particulars accurately reflect his position and testimony as to circumstances of the accident in which plaintiff's wife was

killed. Plaintiff contends, then, and correctly so, that the court erred in considering Henderson's affidavit in ruling on the motion to remand in the first place.[2]

In his deposition, Henderson confirmed that he began sounding the bell more than 300 yards before the crossing. He testified that he blew the whistle, as well, but stated that "the whistle wasn't working properly at Hickory the day that Miss Wilson died" because it "wouldn't blow a long blast." Rather, although it would sound loudly when he first hit the whistle button, the sound level would drop down low, kind of "die out," so that in order to maintain a sufficiently loud whistle signal, Henderson had to repeatedly hit the whistle button to bring the sound level back up. Henderson testified that he first noticed the problem with the whistle at the Lake crossing, some three to five crossings before the Hickory crossing, though it was not consistent. For example, he had no problem with the whistle on the crossing immediately preceding Hickory.

Plaintiff takes the position that applicable law, which places the duty on the engineer to sound a reasonably adequate audible warning when a train approaches a crossing, and to use reasonable care so that the crossing will be reasonably safe, and in view of Henderson's deposition testimony relating to the whistle malfunction, along with his testimony that he was aware of the problem before reaching the Hickory crossing and yet took no other warning or protective action, such as reducing the speed of the train, it cannot be said that he has no possibility of recovery against Henderson on his claims against him.[3] For the reasons that follow, the

---

2. KCS has urged the court to deny plaintiff's motion to reconsider on the basis that it was not timely filed. The court prefers to address the motion on the merits.

3. In addition to directing the court to Henderson's deposition testimony concerning

the whistle problem, plaintiff argues in his motion to reconsider that Henderson admitted that it was his job as engineer to run the train safely; that he testified that something was wrong with *the brakes* and the whistle that day; and that he felt guilty about the wreck, all of which, according to plaintiff,

court remains of the opinion that even in light of this new evidence of whistle malfunction, plaintiff still has no claim against Henderson on which he has any reasonable possibility of recovery. *See Travis v. Irby,* 326 F.3d 644, 648 (5th Cir.2003) (setting forth fraudulent joinder standard).

As observed in the court's previous opinion denying remand, although all trains are required by law to be equipped with a bell and with a whistle or horn, *see* Miss. Code Ann. § 77–9–225 (1999), this statute does not require that both be sounded at train crossings. Rather, the statute requires that the train crew "cause the bell to be rung *or* the whistle or horn to be blown" (emphasis added) at a distance of at least 300 yards in advance of a crossing, and states that "[t]he bell shall be kept ringing continuously *or* the whistle or horn shall be kept blowing at repeated intervals" (emphasis added). That is to say, either the bell must be continuously rung

or the whistle or horn must be blown at repeated intervals for a distance of at least 300 years in advance of a crossing. And here, irrespective of the state of the evidence regarding whether or how the whistle functioned on the occasion of the accident in question, the record contains ample uncontroverted evidence that the bell on the train was rung continuously from a distance of more than 300 yards before the crossing.[4]

In addition, as the court observed in its earlier opinion, two of the witnesses who actually observed the accident, namely, T.W. Beech, the brakeman on the train at the time of the collision, and Donald Grayson, an off-duty KCS employee riding on one of the locomotives, have stated in affidavits, that as Ms. Wilson's car approached the train tracks, it stopped or slowed briefly, and then attempted to quickly pass in front of the train. This evidence establishes not only that

lend support to his claim that Henderson was negligent on the occasion of the accident. However, the fact that Henderson acknowledged his general duty to operate the train safely is hardly a concession that he failed to do so. And although Henderson acknowledged in his testimony that he had said he felt guilty about the wreck, he did not testify that he felt guilty because he believed that he caused the wreck. On the contrary, Henderson was adamant in his testimony that he felt he did all he could to avoid the accident. And while Henderson did testify that earlier on the day of the wreck, there had been some kind of problem with the brakes on another locomotive, or on another configuration of locomotives, he testified that before leaving on the run, he checked the brakes, realized there was a problem and reworked the configuration so that the brakes would function properly. He testified, in fact, that had the problem not been corrected, he would never have allowed the train to leave on this run. Plaintiff's arguments in this regard, therefore, add nothing to his position.

**4.** Though the only evidence presented by plaintiff in support of his motion to reconsid-

er is Henderson's deposition testimony and correspondence of counsel concerning Henderson's unsigned affidavit, plaintiff, in response to defendant's motion for summary judgment, has presented the affidavits of three persons who live in the vicinity of the Hickory crossing, each of whom states specifically that he or she did "not hear a train whistle or horn" sound before the impact of the train with Ms. Wilson's vehicle. None of these witnesses states that they did not hear the *bell* sounding before the wreck. Thus, while this evidence may fairly be said to create an issue of fact as to whether the *whistle* was blown, it does not address or refute defendant's evidence that the bell was rung-which is all the law required be done.

The court notes that KCS has moved to strike each of these affidavits on the basis that plaintiff failed to disclose the identity of these witnesses in his pre-discovery disclosure or at any time prior to the discovery cut-off date. Because these affidavits do not support plaintiff's claim that a possibility of recovery exists against Henderson and do not preclude the entry of summary judgment for KCS, the court need not consider whether they should be stricken from the record.

Henderson could not have avoided the accident, but it also shows that any alleged failure by Henderson to sound the whistle or other proper audible warning of the train's approach, or any malfunction of the equipment itself, did not proximately cause the accident, for the evidence from these witnesses, which plaintiff has not addressed, much less attempted to refute, shows that Ms. Wilson was aware of the train, and tried to pass in front of it.[5] *See Illinois Cent. Gulf R. Co. v. Yates*, 334 So.2d 364, 369 (Miss.1976) (Lee, J., concurring) (observing that "if an individual is aware of, or knows of, the presence and approach of a train, [failure to give statutory signals] would not be a proximate or contributing cause of the accident") (citations omitted). For all of these reasons,

the court concludes that plaintiff's motion to reconsider should be denied. That brings the court to KCS's motion for summary judgment.

In its motion, KCS submits that given the basis for plaintiff's claims against KCS in this case, it follows that for the reasons the court has concluded that there is no claim against Henderson, it must also be concluded that KCS is entitled to summary judgment.[6] That is, in fact, the case.

■ The court has already addressed the evidence relative to plaintiff's claim based on a negligent failure to warn, and for the reasons already explained, the court concludes that plaintiff has failed to create a genuine issue of material fact with respect to this claim.[7] That is, the court finds, based on the evidence of record, that

---

5. In Grayson's deposition, furnished by KSC in opposition to plaintiff's motion to reconsider and in support of its motion for summary judgment, Grayson testified that as the train approached the crossing, he was looking out the window of the third locomotive and saw Ms. Wilson's car approaching the tracks. He testified,

> I just remember that car coming. And when I first seen her, she was—she was coming pretty fast. Of course, I didn't know it was a woman at that time. I knew—you know, I could see them looking. And when they come into my sight they were slowing down real fast. And I didn't think nothing of it until she let off the brakes and hit the gas. And that's when I stood up.

He elaborated, stating:

> I seen a red car. It was coming pretty fast, hitting the brakes from about where that road comes into Smede Street. And I didn't think much about it and—until she let off the brakes, and I guess she stomped the gas, because it stood up, you now. And that's when I stood up and told Steve that, "I think we're fixing to hit one. This cars not gon' stop."

6. KCS submits that the "law of the case" doctrine applies to the court's earlier opinion denying remand, but argues that in any event, even without resort to reliance on the court's earlier opinion, summary judgment is plainly in order as based on the evidence of record,

no genuine issue of material fact exists with regard to any of plaintiff's claims against KCS. The court finds it unnecessary to address KCS's "law of the case" argument, for it is evident, as KCS further contends, that summary judgment is proper based on traditional summary judgment analysis.

7. Plaintiff has asserted a related claim that KCS was "negligent in failing to properly inspect and maintain the locomotive operated by Henderson in good, safe and proper working condition," and charges specifically, that prior to the date of the accident, KCS knew the whistle was not working properly and yet it did not repair the whistle or remove the engine from service so that it could be repaired. KCS argues that this claim is preempted by the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701, *et seq.*, which it submits does not afford a private right of action on behalf of crossing accident plaintiffs. It contends further that even if plaintiff could assert a claim for negligence under the Act, or under state law in spite of the Act's preemptive force, plaintiff still could not prevail since he cannot prove that the absence of a properly functioning whistle caused or contributed to the accident at issue. Whether KCS's assessment of the effect of the Locomotive Inspection Act on plaintiff's claim in this regard is in doubt, *see Herold v. Burlington Northern, Inc.*, 761 F.2d 1241 (7th Cir.1985) (concluding that failure to maintain appurte-

it is undisputed that the bell was sounded continuously from a distance of more than 300 feet in advance of the crossing, and that Ms. Wilson saw the train and, after initially braking, sped up in an attempt to cross in front of the train. Plaintiff, as noted, has not even addressed this evidence, much less tried to refute it in any way.

■ Based on this same evidence, together with additional affirmative evidence from KCS that its crew kept a proper lookout at all times and that the accident could not have been avoided by the train crew due to the circumstances created by Ms. Wilson, the court also concludes that plaintiff has failed to create a genuine issue of material fact on his claims that KCS failed to keep a proper lookout or failed to slow or stop for Ms. Wilson's car.

■ As to his claim based on excessive speed, although plaintiff argues that he "believes that the circumstances which arose at the Hickory crossing ... were a specific local safety hazard" and that his claim against KCS for negligence based on failure to slow the train as it approached the crossing is therefore not preempted by the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101, *et seq.*, the court is unpersuaded. Simply put, regardless of any "specific local safety hazard," because the train was traveling within the maximum speed allowed by federal regulations for the class of track on which it was running, the speed of the train is considered reasonable as a matter of federal law. As the court held previously,

> Because the train was being operated below the maximum rate of speed mandated by federal regulation, any negligence claim ... for excessive speed, regardless of the track conditions, is preempted by federal law. *See accord Woods v. Amtrak*, 982 F.Supp. 409, 411 (N.D.Miss.1997) (holding that because the train was operating below the federal speed limit, plaintiff could not maintain a claim for negligence based on excessive speed); *Wright v. Illinois Cent. R.R. Co.*, 868 F.Supp. 183, 186–87 (S.D.Miss.1994) (concluding that plaintiff could not overcome federal preemption by arguing that defendant operated the train at an excessive speed in light of allegedly hazardous track conditions, such as overgrown vegetation and the angle of the crossing).

*Wilson v. Kansas City Southern*, Civil Action No. 4:01CV323LN, slip op. at 4.[8]

---

nance of locomotive in good operating condition is a violation of the Locomotive Inspection Act and that jury could reasonably have found, in suit by victim of crossing accident, that the violation contributed to the accident), its position that proof of causation is required, yet lacking here, is well founded for the reasons set forth in the text.

**8.** Though plaintiff is not altogether clear about this, perhaps it is his position now that since the whistle on the train was not functioning properly, then KCS, through its crew, should have taken greater care by slowing the train when approaching crossings. The conclusion that the FRSA preempts negligence claims based on train speed regardless of specific track conditions derives, in part, from the fact that track conditions are taken into account by the Federal Railroad Administration in setting maximum allowable train speeds. *See Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1558 n. 9 (11th Cir.1991). Still, it has been said that "the preemption of the excessive speed claim notwithstanding, evidence of the train's speed is relevant to any claim premised upon the adequacy of the warning system at the railroad crossing." *See Watson v. Rail Link, Inc.*, 826 F.Supp. 487, 490 (S.D.Ga.1993). In this case, plaintiff would seem to be claiming that the train's warning system was inadequate because either the whistle was not sounded (if you accept plaintiff's affidavits) or it was not working properly so that the whistle was not as consistently loud as it otherwise would have been. It remains uncontroverted, however, not only that the bell was sounding continuously as the train approached the crossing, thus providing the statutorily required warn-

In addition to these negligence claims relating to proper lookout, train speed and warnings, plaintiff claims that KCS negligently failed to maintain traffic control devices at the Hickory crossing. In connection with its motion, KCS has presented evidence that federally-funded warning devices, in the form of warning signs, were present at the time of the accident, which are adequate as a matter of law. *See Norfolk Southern Ry. Co. v. Shanklin,* 529 U.S. 344, 357–58, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (holding that where evidence shows that federal funds were expended for installation for warning devices or signs at railroad crossing, state law claims based on adequacy of those warning devices are preempted by the Federal Railroad Safety Act). In response to KCS's motion on this point, plaintiff has not contended otherwise, and summary judgment is appropriate as to this claim.

Based on the foregoing, it is ordered that plaintiff's motion to reconsider is denied, and that KCS's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ing, but also that Ms. Wilson actually saw the train and tried to cross in front of it.